**BEFORE THE UNITED STATES JUDICIAL PANEL**

**ON MULTI-DISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: LUMBER LIQUIDATORS CHINESE-MANUFACTURED FLOORING PRODUCTS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION** | **MDL No. 2627** |

**INTERESTED PARTY JOHN FLANAGAN'S RESPONSE AND BRIEF IN PARTIAL OPPOSITION TO MOTION FOR CONSOLIDATION AND TRANSFER UNDER 28 U.S.C. § 1407**

## I.   INTRODUCTION

John Flanagan, the named plaintiff in a putative class action entitled *Flanagan v. Lumber Liquidators, Inc., et al.,* pending before the United States District Court for the Central District of California, Western Division, Civil Case No. 2:15-cv-01752-MWF-AS ("Flanagan"), hereby respectfully submits this Response and Brief in Partial Opposition to Motion for Consolidation and Transfer Under 28 U.S.C. 1407,[1] as an interested party to this proceeding before the Judicial Panel on Multi-District Litigation ("Panel").

As set forth herein, Flanagan supports the Panel's consolidation of the 45 currently pending and related putative class actions against Lumber Liquidators, Inc. and related entities (including cases before the Panel and potential add-on cases not yet before the Panel), as well as all subsequently filed and related actions, before one federal district court because these actions involve common questions of fact, and transfer to a single district and division will be convenient for all parties and witnesses, and will also allow for just and efficient pre-trial proceedings.

---

[1] The Motion for Consolidation and Transfer Under 28 U.S.C. §1407 was filed by plaintiffs in *Conte, et al. v. Lumber Liquidators, et al.*, 3:15-cv-01012 (N.D. Cal.) on or about March 9, 2015.

Flanagan also agrees with the moving parties that the actions should be transferred to a federal district in California, given the plaintiffs' common allegations that the defendants not only failed to comply with California regulations of formaldehyde emissions from composite wood flooring products, but deceptively marketed their products to consumers as being compliant with these regulations. Additionally, the predominant number of cases filed to date have been filed in California federal district courts, as compared to any other state.

However, Flanagan respectfully requests that the JPML transfer these actions to the Central District of California, Western Division. While both the Northern District of California and the Central District of California are highly accessible districts located in metropolitan locations, and both have extensive experience with multi-district litigation ("MDLs"), including those involving deceptive sales practices, the Central District of California has a more favorable MDL docket as compared to the Northern District of California. Thus, the Central District of California, Western Division has both the expertise and requisite resources to effectively manage this potential MDL. Additionally, centralization in Central District of California, Western Division would permit the Panel to assign the litigation to an experienced transferee judge, Margaret M. Morrow, whose current docket includes only one MDL involving putative class actions with similar allegations of deceptive marketing and sales practices of a product.

## II.      BACKGROUND

Consumers across this nation are distraught over recent news that the composite wood flooring products they purchased from Lumber Liquidators are emitting unsafe and illegal levels of formaldehyde gas, a known human carcinogen, into their homes and businesses. In the weeks following the March 1, 2015 airing of a 60 Minutes news story that disclosed to the public test results from accredited labs showing consistently unsafe levels of formaldehyde emissions from the company's Chinese-made laminate flooring in violation of California regulations, which the

defendants tout compliance with not only in California but across the country, no less than 45 putative class action lawsuits have been filed in federal district courts across the country.[2] It is likely that, in ensuing weeks and months, additional lawsuits will be filed on behalf of consumers.

Each of the 45 pending putative class actions ("Related Actions") allege that the same defendants, Lumber Liquidators, Inc., and related entities (hereinafter, "Lumber Liquidators" or "Defendants") market, distribute, and sell various Chinese-made composite wood flooring products (laminate and engineered wood flooring) at their retail stores across the country and via their website ("Chinese Flooring"). Plaintiffs allege, based on testing by accredited laboratories, that the Chinese Flooring emits excessive levels of formaldehyde gas, a substance that is a known human carcinogen and hazardous to human health. Cal. Code Regs., tit. 17, §§ 93000 and 93001; Cal. Health & Saf. Code § 39655(a). Long term exposure to formaldehyde gas has been linked to certain types of cancers, whereas short term exposure may cause or exacerbate asthma, cause chronic respiratory irritation, eye irritation, and skin irritation, among other ailments. The risk of these health problems is significantly greater for children.[3]

Lumber Liquidators labeled and sold the toxic Chinese Flooring as compliant with the California Air Resources Board's ("CARB") Phase 2 regulation of the emission of formaldehyde from composite wood products sold in California in the State of California, a regulation promulgated by CARB for public health and safety reasons. *See* Title 17 of the California Code of Regulations Sections 93120-93120.12. This marketing and product labeling was not limited to

---

[2] A case search was conducted via PACER on March 20, 2015, the date of this filing, which revealed 45 putative class action cases currently pending against Lumber Liquidators, Inc. on behalf of consumers for claims related to the marketing, distribution, and sale of composite wood laminate flooring products that emit unsafe and/or illegal levels of formaldehyde gas.

[3] *See* National Cancer Institute at the National Institutes of Health's fact sheet entitled Formaldehyde and Cancer Risk: http://www.cancer.gov/cancertopics/causes-prevention/risk-factors/cancer-causing-substances/formaldehyde/formaldehyde-fact-sheet.

Chinese Flooring products sold in California -- Lumber Liquidators represents on its website that it requires all of its "suppliers [to] comply with California's advanced environmental requirements, even for products sold outside California.[4]" Plaintiffs allege across the Related Actions that, contrary to these representations, Lumber Liquidators' Chinese Flooring is not CARB Phase 2 compliant. Rather, the Chinese Flooring emits dangerous levels of formaldehyde gas, which exceed the California regulations. Thus, the Chinese Flooring poses great health risks to consumers.

The Related Actions allege that, for the purpose of increasing sales, Lumber Liquidators misrepresented the true nature of the Chinese Flooring to consumers. The Related Actions allege violations of state law prohibiting unfair and deceptive trade practices. Specifically, the Related Actions allege violations of state consumer protection statutes, breach of express warranties, and/or unjust enrichment. The Related Actions also raise common issues of law and fact regarding the deceptive, false, and misleading advertising, marketing, and labeling of Chinese Flooring. Transfer and consolidation or coordination of the cases to the Central District of California, Western Division, would serve the convenience of the parties and witnesses and promote the just and efficient prosecution of these actions.

As set forth herein, Flanagan supports the Panel's consolidation of the 45 currently pending and related putative class actions against Lumber Liquidators, Inc. and related entities, as well as all subsequently filed and related actions, before one federal district court. The Related Actions involve common questions of fact regarding the defendants' labeling, marketing, and sale of flooring products to consumers as compliant with California regulations limiting formaldehyde

---

[4] *See* Lumber Liquidators website: http://www.lumberliquidators.com/sustainability/health-and-safety/?WT.ad=GLOBAL_FOOTER_HealthSafety

emissions from composite wood flooring products whereas the pending actions allege the flooring products emit formaldehyde at unsafe levels in excess of California regulations. Transfer to a single district and division will also be convenient for all parties and witnesses, and will allow for just and efficient pre-trial proceedings. Little litigation activity has occurred in the Related Actions, nearly all of which were filed within the past few weeks. No depositions have taken place, and no trials are scheduled. Moreover, the Related Actions seek to represent overlapping classes of consumers. Absent transfer and coordination of these actions, the parties and federal courts will face the burden and expense of duplicative discovery and pre-trial proceedings, and potentially inconsistent pre-trial rulings.

However, Flanagan respectfully requests that the JPML transfer these Related Actions to the Central District of California, Western Division. The Central District of California is a highly accessible district in a metropolitan location, has extensive experience with multi-district litigation ("MDLs"), including those involving deceptive sales practices, has a relatively more favorable docket as compared to the Northern District of California, and thus has both the requisite resources and expertise to manage such an MDL.[56] In the Central District, it takes only on average 5.3 months from filing to disposition of civil cases compared to 7.9 months in the Northern District, and only 20 months from filing of civil cases to trial compared to a whopping 30.9 months in the Northern

---

[5] *See* MDL Statistics Report - Distribution of Pending MDL Dockets by District:
www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-March-16-2015.pdf. The Report identifies only 14 MDLs pending before the Central District of California, compared to 17 before the Northern District of California.
[6] *See also* Administrative Office of the United States Courts website, Report entitled United States District Courts – National Judicial Caseload Profile at pages 66 and 68:
http://www.uscourts.gov/uscourts/statistics/federalcourtmanagementstatistics/2014/district-fcms-profiles-september-2014.pdf.

District of California.[7] Finally, centralization in this district and division would permit the Panel to assign the litigation to an experienced transferee judge, Margaret M. Morrow, a well-regarded jurist who has presided over numerous complex cases including MDLs. Prior to her appointment in 1998, Judge Morrow also served as President of the Los Angeles County Bar Association and the State Bar of California.[8] Judge Morrow's current docket includes only one MDL involving putative class actions with similar allegations of deceptive marketing and sales practices of a product.[9]

## III.    LEGAL STANDARD

Actions containing allegations with common questions of fact may be transferred and consolidated under Section 1407 if transfer will be for the convenience of the parties and witnesses, and will promote the just and efficient conduct of the transferred cases. 28 U.S.C. § 1407. The Panel typically considers the following four factors in deciding whether to transfer and consolidate a case under Section 1407:

- the elimination of duplication in discovery;

- the avoidance of conflicting rules and ins;

- the reduction of litigation cost; and

- the conservation of the time and effort of the parties, attorneys, witnesses and courts.

*See* Manual for Complex Litigation (Third) § 31.131 (1995) (citing *In re Plumbing Fixture Cases,* 298 F. Supp. 484 (J.P.M.L. 1968)). Each of these elements is met here.

---

[7] *See* Administrative Office of the United States Courts website, Report entitled United States District Courts – National Judicial Caseload Profile at pages 66 and 68: http://www.uscourts.gov/uscourts/statistics/federalcourtmanagementstatistics/2014/district-fcms-profiles-september-2014.pdf

[8] http://en.wikipedia.org/wiki/Margaret_M._Morrow.

[9] *See Id.*, identifying one pending MDL before Judge Morrow, MDL 2291 In re: Wesson Oil Marketing and Sales Practices Litigation.

6

**IV.    ARGUMENT**

Flanagan respectfully moves the Panel to centralize the Related Actions alleging claims for damages caused by Defendants' scheme to deceive and defraud consumers by misrepresenting the safety of the Chinese Flooring. Transfer and consolidation of the cases in the Central District of California, Western Division would serve the convenience of the parties and witnesses and promote the just and efficient prosecution of these actions.

**A.    The Chinese Flooring Litigation Satisfies the Requirements for Consolidation and Transfer Under 28 U.S.C. § 1407.**

Pretrial transfer and consolidation under Section 1407 is appropriate and necessary. These cases involve the same factual allegations and legal standards, and they will likely be numerous. Unless these cases are consolidated, the parties will incur excessive costs due to duplicative discovery, and will face the risk of inconsistent rulings on a variety of matters.

**1.      The Litigation Involves Common Questions of Fact and Law.**

The Related Actions should be transferred for coordination or consolidation because they allege essentially the same unlawful, false, unfair, and deceptive advertising, marketing, and product labeling practices by the defendants relating to Chinese Flooring.  The Related Actions allege that the same defendants committed the false labeling during the same period of time and based on the same underlying facts.

When two or more complaints assert comparable allegations against an identical defendant based on similar transactions and events, common factual questions are presumed. *See In re Air W., Inc. Sec. Litig.*, 384 F. Supp. 609, 611 (J.P.M.L. 1974); *In re Seeburg-Commonwealth United Merger Litig.*, 362 F. Supp. 568 (J.P.M.L. 1973). Additionally, the presence of individualized factual issues in the pending cases is not a barrier to transfer and consolidation under Section 1407 as it "does not require a complete identity or even a majority of common factual issues as a

prerequisite to centralization." *In re Zimmer Durom Hip Cup Prods. Liab. Litig.*, 717 F. Supp. 2d 1376, 1378 (J.P.M.L. 2010); *see also In re North Sea Bent Crude Oil Futures Litig.*, 2013 WL 5701579 (J.P.M.L. 2013).

The Related Actions involve multiple common questions of fact and law including, *inter alia*: (1) whether the defendants' conduct is unlawful, false, unfair, and deceptive to consumers under state laws; (2) whether the defendants breached express warranties; (3) whether the defendants were unjustly enriched by their misconduct; and (4) the nature and extent of damages and other remedies to which the named plaintiffs and putative class members are entitled.

2.   **The Parties Face Duplicative Discovery Absent Transfer and Consolidation.**

Because the allegations of all the cases are essentially the same, the parties to all 45 Related Actions face duplicative discovery if the cases are not consolidated and transferred. This is an important consideration for the Panel in that transfer and consolidation "ensure[s] that the actions are supervised by a single judge who, from day-to-day contact with all aspects of the litigation, will be in the best position to design a pretrial program that will prevent duplicative discovery . . . and substantially conserve the time and efforts of the parties, the witnesses and the federal judiciary." *In re Resource Exploration Inc. Sec. Litig.,* 483 F. Supp. 817, 821 (J.P.M.L. 1980).

The parties in these actions will necessarily engage in duplicative discovery. All plaintiffs will be seeking the same documentation from the defendants and will likely request to depose the same parties and witnesses. In response, the defendants will assert the same class certification objections and discovery objections, seek the same protective orders, and assert the same privileges in each case. Transfer and consolidation will ensure that counsel coordinate their efforts and thus save all parties time and money.

### 3. Transfer and Consolidation Will Prevent Inconsistent Pretrial Rulings.

Transfer and consolidation will net significant savings and efficiencies by avoiding repetitive discovery and motions practice, as well as potentially inconsistent pretrial rulings. *See In re North Sea Brent Crude Oil Futures Litig.*, 2013 WL 5701579 (J.P.M.L. 2013). The Panel considers the probability of inconsistent rulings on pretrial issues because of the possible issue preclusion and other collateral estoppel effects on other, related cases. *See In re Enron Securities Derivative & ERISA Litig.,* 196 F. Supp. 2d 1375, 76 (J.P.M.L. 2002) (granting a transfer in part to prevent inconsistent pretrial rulings, particularly with respect to questions of class certification). Because of the similarity of the allegations in the Related Actions, and the likelihood that future filed actions will contain similar actions, the possibility of inconsistent pretrial rulings is substantially increased.

### 4. There is Sufficient Numerosity to Support Transfer and Consolidation.

To date, 45 putative class action cases are currently pending before federal courts regarding this matter. Given the significant pretrial publicity of the issues presented in this matter, Flanagan expects that additional cases will be filed in a multitude of districts, making transfer and consolidation essential. In any event, the Panel has routinely ordered transfer and consolidation of five or fewer cases. *See In re Wireless Tel. Replacement Protection Programs Litig.,* 180 F. Supp. 2d 1381, 1382 (J.P.M.L. 2002) (granting transfer and centralization of three consumer protection cases and determining that pending motions can be presented to and decided by the transferee judge); *In re Philadelphia Life Ins. Co. Sales Practices Litig.,* 149 F. Supp. 2d 937, 938 (J.P.M.L. 2001) (granting transfer of two deceptive insurance sales cases and finding that such transfer would promote the just and efficient conduct of the litigation); *In re Amoxicillin Patent & Antitrust Litig.,* 449 F. Supp. 601, 603 (J.P.M.L. 1978) (granting transfer of three cases involving patent and

antitrust issues); *In re Alodex Corp.,* 380 F. Supp. 790, 791 (J.P.M.L. 1974) (granting transfer of three securities actions). As a result, there is sufficient authority for the transfer and consolidation of these actions against the defendants.

      **B.**      **The Central District of California, Western Division is the Appropriate Transferee Forum.**

Flanagan agrees with the *Conte* plaintiffs that transfer of the Related Actions to a district and division within California is appropriate because the Related Actions assert the defendants' violations of California regulations of formaldehyde emissions from composite wood flooring products and because the majority of cases have been filed in this state as compared to any other state. Having a California judge who is familiar with California laws and regulations preside over this litigation would benefit the parties as the litigation proceeds towards resolution.

However, Flanagan respectfully requests the consolidation and transfer of these cases to the United States District Court for the Central District of California, Western Division where a significant number of cases have been filed in recent weeks. Of the 45 cases filed thus far, 16 are filed in California federal courts and, of those, five are filed in in the Central District of California. Because the defendants' actions have received a great deal of publicity, it is almost certain that numerous additional cases will be filed in the Central District of California, which encompasses a highly populated geographic region, in the future. Additionally, the Central District of California, Western Division has extensive experience in managing MDLs, has favorable docket conditions as compare to the Northern District of California, and will serve as a convenient forum for the parties and witnesses to the Related Actions.

"The Panel has expressly stated that it will consider docket conditions in selecting a transferee district. . . . [T]he Panel will favor the court with the most current docket." Multidistrict Litigation Manual § 6:17 (2014). The Central District of California has more favorable docket

conditions than the Northern District of California to which the *Conte* plaintiffs respectfully request transfer. As noted above, in the Central District, it takes only on average 5.3 months from filing to disposition of civil cases compared to 7.9 months in the Northern District, and only 20 months from filing of civil cases to trial compared to a whopping 30.9 months in the Northern District of California. Additionally, the number of MDLs pending before the Central District of California is less than the number pending before the Northern District of California. These conditions support transfer of the Related Actions to the Central District of California.

Further, the Central District of California, Western Division is a very convenient forum to host a consolidated or coordinated MDL litigation because of the judicial competency and metropolitan location. In *In re Worldcom, Inc., Securities & ERISA Litig.*, 226 F. Supp. 2d 1352, 1355 (J.P.M.L 2002), the panel consolidated several actions and transferred the consolidation action to the nearby Southern District of New York, noting in particular that "a litigation of this scope will benefit from centralization in a major metropolitan center that is well served by major airlines, provides ample hotel and office accommodations, and offers a well-developed support system for legal services." *See also In re Jamster Mktg. Litig.*, 427 F. Supp. 2d 1366, 1368 (J.P.M.L. 2006) (choosing as a transferee forum an "accessible metropolitan location."). These considerations apply with full force to Central District of California, Western Division with courthouses located in downtown Los Angeles (a short distance from the airport), a city that is readily accessible to parties and witnesses by plane and well equipped with hotels and office space to accommodate the parties' business needs. Accordingly convenience weighs in favor of transferring and consolidating these actions in the Central District of California, Western Division.

Finally, centralization in this district and division would permit the Panel to assign the litigation to Judge Margaret M. Morrow, an experienced jurist whose current docket includes only one MDL involving putative class actions with similar allegations of deceptive marketing and sales

practices of a product. Judge Morrow is one of the most well-regarded judges within the Central District of California and has extensive experience presiding over complex litigation.

## V.      CONCLUSION

For the foregoing reasons, Flanagan agrees with the *Conte* plaintiffs that the Panel should centralize the Related Actions alleging claims for damages caused by Defendants' scheme to deceive and defraud consumers by misrepresenting the safety of the Chinese Flooring, and transfer and consolidate the cases to a California district court. However, Flanagan respectfully requests that the Panel transfer and consolidate the cases to the Central District of California, Western Division to better serve the convenience of the parties and witnesses and promote the just and efficient prosecution of these actions.

Respectfully Submitted,

Date: March 20, 2015

/S/ Raymond P. Boucher
Raymond P. Boucher
  *ray@boucher.la*
Shehnaz M. Bhujwala
  *bhujwala@boucher.la*
BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, CA 91367
Tel: 818-340-5400
Fax: 818-340-5401

*Attorneys for Plaintiff John Flanagan*