BEFORE THE UNITED STATES JUDICIAL PANEL

ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: LUMBER LIQUIDATORS CHINESE-MANUFACTURED FLOORING PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL No. 2627 |

**INTERESTED PARTY RESPONSE OF PLAINTIFF JOSEPH A. DEL BRACCIO IN SUPPORT OF TRANSFER OF RELATED ACTIONS TO THE NORTHERN DISTRICT OF CALIFORNIA FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407**

## I. INTRODUCTION

Joseph A. Del Braccio, named plaintiff in *Del Braccio v. Lumber Liquidators, Inc.*, Case No. 15-cv-01249 (N.D. Cal., pending before the Honorable Jon S. Tigar), respectfully submits this brief in support of plaintiffs Shelly Conte, Mark Reyes, and Daniel Tacktill's Motion for Consolidation and Transfer Under 28 U.S.C. § 1407. Plaintiff Del Braccio supports consolidation and transfer of all related actions in this litigation to the Northern District of California for coordinated or consolidated pretrial proceedings. To date, approximately 78 class action lawsuits alleging similar factual and legal claims against Lumber Liquidators, Inc. and its affiliates (collectively, "Lumber Liquidators") have been filed all over the country.[1] 13 have been filed in the Northern District of California, more than any other judicial district. The first-filed case in this litigation, *Balero, et al. v. Lumber Liquidators, Inc.*, was filed in California Superior Court for the County of Alameda on December 11, 2014, and then removed to the Northern District of California on March 4, 2015. *See* Case No. 15-cv-1005-JST (N.D. Cal.). That case has been assigned to the Honorable Jon S. Tigar, and has proceeded further than any

---

[1] This number is based on a case search conducted via PACER on March 30, 2015 for class actions filed against Lumber Liquidators alleging claims related to the marketing and sale of their laminate wood flooring products containing excess levels of formaldehyde.

862776.1

other related case in this litigation.

Plaintiff Del Braccio believes that consolidation of these related actions in the Northern District of California is appropriate under 28 U.S.C. § 1407 for several reasons.  *First*, the Northern District of California has the strongest nexus to this litigation and is the location of the first-filed and most procedurally advanced case.  *Second*, it is the most convenient forum for the parties and witnesses, especially expert witnesses involved in testing the products at issue and witnesses located in China.  *Third*, it has the judicial resources and expertise to handle this vast MDL proceeding, with Judge Tigar being particularly well-suited to oversee it.

## II.  BACKGROUND

All of these related actions are consumer class actions brought against Lumber Liquidators involving the levels of formaldehyde in certain of their laminate wood flooring products.  Plaintiffs universally allege that Lumber Liquidators marketed and sold Chinese-manufactured laminate wood flooring at their retail stores in the United States as compliant with California formaldehyde emission standards, when they were not.  The California Air Resources Board ("CARB") has established standards that regulate the amount of formaldehyde that can be legally emitted by products sold in California.  Each of the Lumber Liquidators' Chinese-made laminate wood flooring products sold in California and the United States is labeled "Phase 2 Compliant for Formaldehyde," or some similar iteration, meaning it complies with CARB regulations.  However, recent independent testing by certified laboratories has revealed that Lumber Liquidators' Chinese-made laminate flooring exceeds the formaldehyde levels permitted by CARB.

The news program *60 Minutes* aired a story on March 1, 2015 that reported the results of a series of tests of Lumber Liquidators' Chinese-made laminate flooring.  The first of those tests analyzed more than 150 samples of laminate flooring sold in California by several large retailers, including Lumber Liquidators, and found that every single sample of Chinese-made laminate flooring sold by Lumber Liquidators failed to meet CARB standards.  Additional tests analyzed 31 samples of Lumber Liquidators' Chinese-made laminate flooring sold throughout the United States and found that all but one failed to meet CARB standards.  In the weeks following the *60*

*Minutes* report, dozens of class actions were filed against Lumber Liquidators alleging similar factual and legal claims. These cases commonly allege violations of state consumer protection statutes and breaches of express and implied warranties. They all involve the same defendant, or series of defendants, and raise common issues of fact and law regarding the false and misleading advertising, labeling, and marketing of Lumber Liquidators' Chinese-made laminate flooring.

The first-filed case in this litigation was *Balero*, filed on December 11, 2014 in Alameda County Superior Court. Lumber Liquidators removed the case to the Northern District of California on March 4, 2015, where it is now pending before Judge Tigar. *Balero* has proceeded further than any other case in this litigation, as the parties are already engaged in motion to dismiss briefing. Lumber Liquidators filed a motion to dismiss or stay the operative complaint in *Balero* on March 11, 2015 (*Balero* Dkt. No. 12), and Plaintiffs filed an opposition on March 25, 2015 (*Balero* Dkt. No. 24). Lumber Liquidators' reply is due by April 1, 2015.

### III. ARGUMENT

**A. Transfer of the Related Actions for Coordination and Consolidation is Appropriate Under 28 U.S.C. § 1407**

As an initial matter, the Panel should transfer and consolidate these actions in a single judicial district because: (1) the actions involve numerous common questions of fact and law; and (2) consolidation will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. *See* 28 U.S.C. § 1407(a).

**1. These Actions Involve Multiple Common Questions of Fact and Law**

When multiple actions pending in different districts contain one or more common questions of fact and law, such actions may be coordinated or consolidated in one judicial district for pretrial proceedings. *See* 28 U.S.C. § 1407(a). The Lumber Liquidators actions share multiple common questions of fact and law, including:

    (a)    Whether Lumber Liquidators falsely represented that its Chinese-manufactured laminate flooring complied with CARB standards;

    (b)    Whether Lumber Liquidators concealed or omitted material facts from consumers regarding the compliance of its Chinese-manufactured laminate

>    flooring with CARB standards;
>
> (c) Whether Lumber Liquidators' conduct constituted unfair, unlawful, or fraudulent business acts or practices in violation of state consumer protection statutes;
>
> (d) Whether Lumber Liquidators breached express and/or implied warranties relating to its Chinese-manufactured laminate flooring; and
>
> (e) The nature and extent of class members' damages and other remedies to which they are entitled.

These common issues give the Panel the authority to order the transfer, consolidation, and coordination of these actions to a single judicial district. *See, e.g., In re Cement & Concrete Antitrust Litig.,* 437 F. Supp. 750 (J.P.M.L. 1977) (ordering transfer and consolidation of cases upon a finding of common questions of fact concerning the existence and scope of an antitrust conspiracy).

### 2. Coordination and Consolidation of the Related Actions in a Single District Will Serve the Convenience of the Parties and Witnesses and Promote the Just and Efficient Conduct of the Litigation

Centralization under 28 U.S.C. § 1407 is proper when it will "serve the convenience of the parties and witnesses and promote the just and efficient conduct of [the] litigation." *In re Hydrogen Peroxide Antitrust Litig.*, 374 F. Supp. 2d 1345, 1346 (J.P.M.L. 2005). If the related actions are not centralized in a single transferee district, each court in which a related action is (or in the future may) be pending will have to make separate inquiries into a substantially similar set of facts involving virtually the same parties and witnesses. These overlapping factual inquiries will inconvenience the parties and witnesses, as they will be forced to make multiple appearances in different venues to resolve the same issues. Maintaining the actions in separate districts is also likely to confuse the parties and witnesses who may be subjected to multiple rulings and protocols regarding the same factual and legal issues. Under these circumstances, coordination and consolidation of these cases into a single district will serve the convenience of the parties by: (1) streamlining discovery; (2) preventing duplicative discovery requests and depositions; (3) preventing duplicative court appearances; and (4) sparing the parties and

witnesses the expense and inconvenience of participating in litigation in different districts all across the country.

Coordination and consolidation will also promote the just and efficient conduct of these actions by preventing the judiciary, the parties, and witnesses from having to expend valuable time and resources conducting duplicative discovery and motion practice, and resolving common questions of fact. Furthermore, transfer and consolidation of the actions in a single district is in the interest of justice because it will prevent the possibility of multiple inconsistent rulings on the common factual and legal issues in the related actions.

**B.      These Actions Should be Consolidated in the Northern District of California Before the Honorable Jon S. Tigar**

In choosing a transferee forum, the Panel considers several factors, including "where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 20.131. In this case, each of these considerations favors transfer to the Northern District of California because: (1) there is a strong nexus between this case and the Northern District of California, where the largest number of cases is pending, the first-filed case is pending and has progressed the furthest, and much of the discovery has occurred; (2) the Northern District of California is the most convenient forum for the parties and witnesses; and (3) the Northern District of California has the judicial resources and expertise to efficiently manage this litigation.

**1.      There is a Strong Nexus Between This Case and the Northern District of California**

The Northern District of California has the strongest nexus to this litigation of all the districts in which related cases have been filed. More cases (13) have been filed in the Northern District of California than in any other district. Less than half that number of cases (6) have been filed in the second highest district, the Central District of California, and most districts have only one or two cases filed (e.g., Northern District of Florida, Eastern District of Texas). The first-filed case in this litigation, *Balero*, currently resides in the Northern District of California. The

*Balero* case has progressed further than any of the related cases—by the time the Panel hears the motion for consolidation and transfer of these actions, *Balero* will have a fully briefed motion to dismiss and a possible opinion from the court. Transferring these actions to a different court could therefore result in unnecessary delay and possibly prejudice the parties. These facts weigh heavily in favor of transfer to the Northern District of California. *See In re Rosuvastatin Calcium Patent Litig.*, 560 F. Supp. 2d 1381, 1383 (J.P.M.L. 2008) (finding the appropriate transferee forum to be the one where "[s]even of the nine actions, including the first-filed actions, are already pending"); *In re Bank of America Credit Protection Mktg. and Sales Practices Litig.*, 804 F. Supp. 2d 1372, 1373 (J.P.M.L. 2011) (finding the appropriate transferee forum to be the one "where the first-filed and relatively most procedurally advanced action is pending").

Additionally, much of the discovery has occurred, or will occur, in the Northern District of California. Several of the laboratories that have tested samples of Lumber Liquidators' Chinese-manufactured laminate flooring are located in California, and some in this district. The Northern District of California is likely home to representatives of those laboratories and other potential non-party witnesses who will be vital to the case. California is also the undisputed hub of activity in this litigation—Lumber Liquidators has more retail stores in California (39) than in any other state in the country, and all of the related actions involve regulations promulgated by CARB, which is headquartered in Sacramento, less than 100 miles from the Northern District.

### 2. The Northern District of California is the Most Convenient Forum

The Panel considers which district is the most convenient for the parties and witnesses when deciding where to transfer an MDL action. *See* 28 U.S.C. § 1407(a) (transfers shall be made by the Panel "upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses…"). The Northern District of California is located in an area with an abundance of hotels, taxis, rental cars, and other necessary litigation resources. San Francisco International Airport, Oakland International Airport, and Mineta San Jose International Airport service the Northern District of California, making it easily accessible to all parties. The Chinese manufacturing mills that produce the laminate flooring in question for Lumber

Liquidators will undoubtedly have key witnesses located in China who will be essential to the prosecution of this case.  The location of the Northern District of California makes it easily accessible to such witnesses, as the Panel has previously recognized that the district is particularly convenient for corporations and witnesses based in Asia.  *See In re Lithium Ion Batteries Antitrust Litig.*, 923 F. Supp. 2d 1370, 1371 (J.P.M.L. 2013) ("The Northern District of California undoubtedly will be the most convenient for the greatest number of parties in this litigation, including the defendants based in Asia.").

> 3. **The Northern District of California Has the Judicial Resources and Expertise to Efficiently Manage This Litigation**

The Northern District of California has handled countless complex MDL proceedings. The Northern District Judges are not only extremely competent, but have a wealth of experience handling complex consumer protection cases, including those involving the types of deceptive marketing and sales practices alleged here.  *See, e.g., In re Coca-Cola Prods. Mktg. and Sales Practices Litig.*, MDL No. 2555 (N.D. Cal. 2014); *In re Carrier IQ, Inc., Consumer Privacy Litig.*, MDL No. 2330 (N.D. Cal. 2012); *In re Bank of America Credit Protection Mktg. and Sales Practices Litig.*, MDL No. 2269 (N.D. Cal. 2011); *In re Google Android Consumer Privacy Litig.*, MDL No. 2264 (N.D. Cal. 2011); *In re Apple iPhone 4 Prods. Liab. Litig.*, MDL No. 2188 (N.D. Cal. 2010); *In re Conseco Life Ins. Co. Lifetrend Ins. Mktg. and Sales Practices Litig.*, MDL No. 2124 (N.D. Cal. 2010).

Judge Tigar of the Northern District of California is particularly well-suited to handle these related cases.  As stated above, Judge Tigar is currently presiding over the first-filed *Balero* case, which is the most procedurally advanced case in the litigation.  He is already familiar with the facts of these cases and has a head start on analyzing some of the legal issues.  Significantly, Judge Tigar has no MDL cases currently pending before him and has the ability to oversee a lengthy and complex MDL case such as this one.  The Panel has often recognized the desirability of transferring MDL cases to a judge who "is not currently assigned to another such docket," and will therefore be well-equipped to manage the litigation.  *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 609 F. Supp. 2d 1379, 1380 (J.P.M.L. 2009); *see also In*

*re Lithium Ion Batteries Antitrust Litig.*, 923 F. Supp. 2d at 1372 ("centralization in this district provides us the opportunity to assign the litigation to a judge who is not presently presiding over other multidistrict litigation").

Judge Tigar is a capable jurist who will be able to steer this litigation on a prudent course. Judge Tigar was nominated to the federal bench in June 2012 and was unanimously confirmed by the Senate. Prior to his federal appointment, Judge Tigar served for ten years as a Judge on the Alameda County Superior Court. The Panel has transferred cases to recently appointed federal judges like Judge Tigar, recognizing their abilities and the fact that they had no pending MDL actions. *See, e.g., In re Lithium Ion Batteries Antitrust Litig.*, 923 F. Supp. 2d at 1372 (transferring case to judge with no pending MDL actions and appointed less than two years prior to transfer); *In re Carrier IQ, Inc. Consumer Privacy Litig.*, 856 F. Supp. 2d 1332, 1333 (J.P.M.L. 2012) (transferring case to judge with no pending MDL actions and appointed less than a year before transfer).

## IV. **CONCLUSION**

For the aforementioned reasons, plaintiff Joseph A. Del Braccio respectfully requests that the Panel order the consolidation and transfer of these related class actions to the Northern District of California under 28 U.S.C. § 1407, "for the convenience of parties and witnesses and to promote the just and efficient conduct of such actions."

DATED: March 31, 2015

    */s/ Bruce L. Simon*

Bruce L. Simon (Bar No. 96241)
**PEARSON, SIMON & WARSHAW, LLP**
44 Montgomery Street, Suite 2450
San Francisco, California 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
bsimon@pswlaw.com

Daniel L. Warshaw (Bar No. 185365)
Alexander R. Safyan (Bar No. 277856)
**PEARSON, SIMON & WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403

Telephone: (818) 788-8300
Facsimile: (818) 788-8104
dwarshaw@pswlaw.com
asafyan@pswlaw.com

AIMEE H. WAGSTAFF (Bar No. 278480)
**ANDRUS WAGSTAFF, PC**
7171 West Alaska Drive
Lakewood, Colorado 80226
Telephone: (720) 255-7623
aimee.wagstaff@andruswagstaff.com

Attorneys for Plaintiff Joseph A. Del Braccio